FILED
2007 Jun-11  PM 04:34
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

**KIMBER-LEIGH MORRIS,**          )
                                                )
            Plaintiff,          )
                                                )
      **vs.**          )          Civil Action Number
                                                )          **5:06-cv-448-UWC**
**TELECHECK SERVICES, INC.,**          )
                                                )
           Defendant.          )

## MEMORANDUM OPINION

The present action was initiated by Plaintiff Kimber-Leigh Morris ("Morris") against Telecheck Services, Incorporated ("Telecheck"), pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. Plaintiff contends that Telecheck violated the FCRA by failing to disclose a copy of her entire consumer file.

Presently before the Court is a motion for summary judgment filed by Telecheck. For the reasons set forth below, the Court finds that genuine issues of material fact exist in the present action. Therefore, summary judgment is not appropriate.

## I.  FACTS

In November 2004, Morris' purse was stolen.  The thief appropriated her checks and presented them as payment to various stores using Morris' name and identification.

Morris claims to have reported the check theft to Telecheck in December 2004. In response, Telecheck requested certain information to verify the theft, which Morris sent on three separate occasions.  Additionally, Morris  requested a copy of her file from Telecheck.  When she failed to receive a copy of her file, she contacted TeleCheck, which requested another copy of the information that she had already sent on three prior occasions.  Morris sent TeleCheck the information and submitted another request for a copy of her file.

Around February 10, 2005, K-Mart dishonored a check written by Morris and informed her that she should contact Telecheck for an explanation about the declination.  Morris contacted TeleCheck via telephone, on or about this same time, and again requested a copy of her file.  However, a Telecheck employee responded that there was no reason to obtain a copy of the file because the file was "clear." Morris informed the employee that her check had just been dishonored in front of several people in line at K-Mart and since she had never written a bad check in her life, the file was significant to her.  Morris again insisted that TeleCheck send her a

copy of her file that day.  This time the employee responded that Morris needed to submit her request in writing.  Morris sent Telecheck another written request for her file, but failed to receive a response. [1]

Several months later, in August 2005, Morris again had a check dishonored. This time, she contacted a lawyer.  She then sent a written request for all of the information in her file to TeleCheck on August 4, 2005, by certified mail return receipt, including a copy of her driver's license for identification purposes.  (Doc. 51, Morris Dep. at Ex. 2.)  While Morris' letter to Telecheck was sent in her name only, on August 17, 2005, Telecheck sent a letter to the Morris home, addressed to Morris' husband requesting additional information.  (Doc. 51, Morris Dep. at Ex. 4.)  This letter explained that Telecheck needed the following information "in writing": 1) Morris' driver's license number; 2) all the numbers on the bottom of her check; and 3) her social security number.  The letter indicated that "[t]his information is being requested for the sole purpose of locating your file and/or information pertaining to your inquiry."  (*Id*.)

Along with the letter, Telecheck sent Morris a summary of rights under the

---

[1]  These incidents occurring prior to August 4, 2005, are disputed by the parties.  Morris does not have any written documentation to support this recitation of events and Telecheck denies that it received any communications from Morris prior to August 2005.  In any event, Morris is <u>not</u> seeking to recover for these alleged FCRA violations that occurred prior to August 2005.

FCRA, as well as a printout from her consumer file based on a computer search using solely her driver's license number.  (*See* Doc. 51, Hogan Dep. at pp. 79-81.)  That print out showed one January 6, 2005, cleared check to Walmart in the amount of $384.00.  (Doc. 51, Morris Dep. at Ex. 8.)  However, the print out failed to disclose information regarding an August 14, 2004, transaction in the amount of $55.52 involving "Martins Wakefield."  (Doc. 51, Hogan Dep. at Ex. 11.)  Unlike the Walmart check, this latter transaction was not linked to Morris' driver's license number.  Instead, this latter transaction was linked to Morris' other identifying data, such as the check routing number and/or her social security number, etc.  (*See* Doc. 51, Hogan Dep. at pp. 83-84.)

On November 3, 2005, Morris sent Telecheck all of the information requested in the company's letter and she again requested a copy of "all information in my file." (Doc. 51, Morris Dep. at Ex. 3.)  In response,  TeleCheck sent a letter dated November 9, 2005, which stated:

> Based on the information that you provided, we find no indications that TeleCheck would decline your check transactions.  Your file reflects a favorable status and contains no derogatory information.

> If we can be of any further assistance, please feel free to contact Checkwriter Services at 1-800-366-2425. [2]

---

[2]  Despite this letter, Morris was convinced that Telecheck's files contained negative information about her and that Telecheck was responsible for the denials of her checks.  During discovery, however, Morris learned that Telecheck had not been the

(Doc. 51, Morris Dep. at Ex. 13.)

A Telecheck representative described the November 2005 letter to Morris as a "positive status letter." (Doc. 51, Hogan Dep. at pp. 81-82.) This letter did not include any information from Morris' file. Thus, Telecheck never disclosed to Morris any information about the check written to Martins Wakefield.

Telecheck's representative testified that the person who sent the positive status letter

> [t]ypically . . . should have sent another file report to [Morris]. That's something we coach them on as we quality monitor their work, that they should send a full file report versus a positive status, since it's not really saying why was it declined, we're not finding anything. So in this case we would have coached the agent and said you should have gone ahead and just sent a full file report, even though it may not reflect any information at all.

(Doc. 51, Hogan Dep. at pp. 81-82.)

## II. FCRA REQUIREMENTS

Pursuant to the FCRA, consumer reporting agencies such as Telecheck are required to give consumers a free copy of <u>all</u> information in their "consumer file" on an annual basis:

---

culprit. Thus, she dropped her claims as they relate to the check denials, but she has elected to go forward with her claim regarding Telecheck's failure to provide her with a complete copy of her consumer file.

Every consumer reporting agency shall, upon request, . . . clearly and accurately disclose to the consumer:

(1) <u>All information in the consumer's file at the time of the request</u>, except that nothing in this paragraph shall be construed to require a consumer reporting agency to disclose to a consumer any information concerning credit scores or any other risk scores or predictors relating to the consumer.

(2) The sources of the information . . . .

(3) (A) Identification of each person (including each end-user identified under section 1681e(e)(1) of this title) that procured a consumer report—

    (I)    for employment purposes, during the 2-year period preceding the date on which the request is made; or

    (ii)    for any other purpose, during the 1-year period preceding the date on which the request is made.

(B) An identification of a person under subparagraph (A) shall include

    (I)    the name of the person or, if applicable, the trade name (written in full) under which such person conducts business; and

    (ii)    upon request of the consumer, the address and telephone number of the person.

. . . .

15 U.S.C. § 1681g (a) (emphasis added).  With respect to the requirement that

consumer reporting agencies disclose "all information in a consumer's file,"

> [t]he term "file", [sic] when used in connection with information on any consumer, means <u>all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored.</u>

15 U.S.C. § 1681a (g) (emphasis added).

A consumer reporting agency that violates the FCRA may be liable for damages. Where a negligent violation occurs, the consumer reporting agency is liable for actual damages, attorney's fees and costs. 15 U.S.C. § 1681o. Inasmuch as Morris has no actual damages, she cannot pursue a claim for a negligent violation.

Rather, her only remaining option is to seek damages for a willful violation. For willful violations a consumer reporting agency is liable for attorney's fees and costs, along with:

(1) actual damages;[3] or

(2) statutory damages of not less than $100 and not more than $1,000.

15 U.S.C. § 1681n; *see Levine v. World Fin. Network Nat. Bank*, 437 F.3d 1118, 1123 (11th Cir. 2006). Additionally, a Court may impose punitive damages for willful violations. 15 U.S.C. § 1681n.

---

[3] Other jurisdictions have "recognized the possibility that a claim for actual damages under the FCRA may include compensation for emotional distress in the absence of physical injury or out-of-pocket expenses." *Levine v. World Fin. Network Nat. Bank*, 437 F.3d 1118, 1124 - 25 (11th Cir. 2006). However, the Eleventh Circuit has not yet decided this issue. *Id.*

## III. ANALYSIS

Telecheck first argues that it is entitled to summary judgment because the company "substantially" complied with the essential elements of the FCRA. (Def.'s Br. at p. 14.)  Telecheck points out that Morris only provided her driver's license number in her August 4, 2005, letter and the Walmart check was the only check linked to her driver's license number.  Thus, according to Telecheck, a complete file disclosure containing only the Walmart check information was sent to Morris in August 2005.  Because the FCRA only mandates disclosure of one free consumer file per year, Telecheck contends it was under no obligation to send Morris another consumer file disclosure in November when she provided additional identifying data.  While the prudent thing might have been to send an additional consumer file, Telecheck was under no obligation to do so argues the company.

There are several problems with this argument.  First, it is undisputed that one of Telecheck's databases contained the Martins Wakefield check at the time Morris requested her file in August 2005, but that information was not disclosed to Morris.  Another problem with Telecheck's argument is that it assumes the company's disclosure was sufficient because the only identifying information provided by Morris was her driver's license number.  Thus, Telecheck apparently hopes to convince the Court that the fault lies with the consumer, not with the company's failure to link its

various databases.

Telecheck's position is problematic.  The statute requires disclosure of "[a]ll information in the consumer's file at the time of the request."  15 U.S.C. § 1681g (emphasis added).  The statute goes on to clarify that the disclosure must include "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." 15 U.S.C. § 1681a (g) (emphasis added).  However, Telecheck failed to disclose all information on Morris "regardless of how the information [wa]s stored."  *See id*.[4]

The FCRA does not excuse such failures by providing an affirmative defense for consumer reporting agencies whose databases are insufficiently linked.  Indeed, the FCRA's requirement that reporting agencies disclose information "regardless of how the information is stored," suggests that Congress intended to prohibit consumer

---

[4]  The Court is not persuaded by Telecheck's reliance on *Gillespie v. Trans Union Corporation*, 482 F.3d 907 (7th Cir. 2007), which Telecheck recently brought to the present Court's attention via letter.  In *Gillespie*, the Seventh Circuit held that the FCRA's requirement that a consumer reporting agency disclose "all information in the consumer's file," does not actually require disclosure of everything in the file, but instead only requires disclosure of the information found in a "consumer report."

In contrast, the Eleventh Circuit in *Nunnally v. Equifax Information Servs., LLC*, 451 F.3d 768, 772-73 (11th Cir. 2006), held that a "consumer file" differs from a "consumer report"; a "consumer report" is a subset of a "consumer file." *Nunnally*, 451 F.3d at 772-73.  While a "consumer file" must be disclosed under ceratin circumstances spelled out in the FCRA, once a consumer reporting agency completes a reinvestigation of a purported error, only a consumer report must be disclosed because the FCRA specifically requires such a disclosure.  The Court rejected the argument by the Plaintiff consumers that a complete "consumer file," must be disclosed after reinvestigation of purported errors.

reporting agencies from defending lawsuits by solely relying on computer software/ database problems, such as the one that exists here.  The present action is particularly troubling because the document listing the undisclosed Martins Wakefield check information in Morris' file contains a column listing her driver's license number. (*See* Doc. 51, Hogan Dep. at Ex. 11.)  Thus, it is unclear from the record what reasonable basis exists for Telecheck's failure to disclose the Martkins Wakefield check when Morris provided her driver's license number in her August 2005 letter.

While the FRCA provides that a consumer must furnish "proper identification" in order to obtain a copy of her consumer file, 15 U.S.C. § 1681h(a)(1), the statute does not excuse a consumer reporting agency from full disclosure simply because it databases are insufficiently linked together.  Moreover, nothing in the FCRA allows a defendant to assert "substantial" compliance as a defense.  Indeed, the statutory damages provision allowing damages of a little as $100, indicates that Congress intended for consumers to receive some compensation for all willful violations, even those violations with little or no impact on the consumer.

Telecheck next argues that summary judgment is appropriate because Morris cannot establish that the FCRA violation was willful.  The FCRA does not define the term "willfulness" and the legislative history does not explain what willfulness means with respect to FCRA violations.  *Reynolds v. Hartford Fin. Serv. Group*, 435 F.3d

1081, 1097 (2006).  Moreover, the Eleventh Circuit Court of Appeals has not yet

addressed this issue.

In *Reynolds v. Hartford Financial Services Group*, a recent Ninth Circuit

opinion, the Court adopted an interpretation of willful that is used by five other

Circuit Courts of Appeal:

> if a company knowingly and intentionally performs an act that violates
> FCRA, either knowing that the action violates the rights of consumers
> or in reckless disregard of those rights, the company will be liable . . .
> for willfully violating consumers' rights.  A company will not have
> acted in reckless disregard of a consumers' rights if it has diligently and
> in good faith attempted to fulfill its statutory obligations . . . .

435 F.3d at 1099.  Four out of the five Circuit Courts who adopted this interpretation

have also clarified that the term willfulness, as used in the FCRA, "need not be the

product of 'malice or evil motive.'" *Id*. at 1098.

In the instant case, Telecheck did not comply with the FCRA because the

company did not send Morris everything in her consumer file as required by the

statute.  Apparently, this non-compliance was due to a failure by Telecheck to link

its various databases.  Whether Telecheck's conduct was not a "knowing" violation

of consumer rights or in "reckless disregard of those rights," is a genuinely disputed

material fact for the jury to decide.

Finally, this Court is not persuaded by Telecheck's argument that the absence

of actual harm indicates an absence of willfulness. The Court finds no support for the proposition that denial of credit or some similar injury is a prerequisite to recovery under the statutory damages provision of the FCRA. Indeed, Congress limited statutory damages to no more than $1,000 - - presumably in an effort to ensure that consumers do not unduly profit from what some might consider minor FCRA violations. Whether Telecheck should be made to answer for its violation to the tune of $100, $1,000, or somewhere in between, is a damages issue for the jury to decide.

For all these reasons, the Motion for Summary Judgment will be denied by separate order.

U.W. Clemon
United States District Judge