FILED
2008 Sep-23 PM 02:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **KIMBER-LEIGH MORRIS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **5:06-cv-448-UWC** |
| **TELECHECK SERVICES, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**
**ON CLASS ACTION MAINTAINABILITY AND**
**RECONSIDERING DENIAL OF SUMMARY JUDGMENT**

In this action under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. Plaintiff Kimber-Leigh Morris ("Morris") contends that TeleCheck Services, Incorporated ("TeleCheck") wilfully violated the FCRA by failing to disclose a copy of her entire consumer file.

Plaintiff has moved for class certification under F.R.Civ.P. 23(b)(3). Doc. 75.

Reluctantly, the Court finds and concludes that because Plaintiff cannot satisfy the "wilfulness" standard set forth in *Safeco Insurance Company of America v. Burr*, 127 S. Ct. 2201 (2007), she lacks standing to represent the class.[1]

[1]The Court has previously denied Telecheck's summary judgment motion, and it motion for reconsideration of the denial. Docs. 62, 63. On the Court's *sua sponte* revisitation of the

Since Plaintiff only seeks damages for wilfulness, summary judgment will be entered in favor of Telecheck and the case dismissed.

## I. Facts

Plaintiff contends that TeleCheck violated the FCRA by failing to disclose a copy of her entire consumer file. TeleCheck is a "check authorization company" that provides merchants with check verification and other services.[2] (Doc. 82 at Tab A, Sullen Dep. at 27.)

In November 2004, Plaintiff's' purse was stolen. Subsequently, forged checks were presented to various merchants bearing Plaintiff's' name and identification. Plaintiff reported the theft to TeleCheck and requested her file on numerous occasions between December 2004 and February 2005, to no avail.

Around February 10, 2005, K-Mart declined a check written by Plaintiff. She contacted TeleCheck, and again requested a copy of her file. [3]

Several months later, in August 2005, after another of Plaintiff's checks had been declined by a merchant, she contacted a lawyer. She then sent a written request

---

issue, the Court concludes that the summary judgment was improvidently denied in view of *Safeco Insurance Company of America v. Burr*, 127 S. Ct. 2201 (2007).

[2]For purposes of the FCRA, TeleCheck is a consumer reporting agency.

[3] Morris is not seeking to recover for these alleged FCRA violations that occurred prior to August 2005.

for all of the information in her file to TeleCheck on August 4, 2005, by certified mail return receipt. (Doc. 51, Morris Dep. at Ex. 2.)

On August 17, 2005, TeleCheck responded with a letter requesting additional information in order to process the file request. Along with the letter, TeleCheck sent a printout from her consumer file showing one January 6, 2005, cleared check to WalMart in the amount of $384.00, which Plaintiff acknowledges to be valid. It is undisputed that this communication from TeleCheck failed to include information regarding an August 14, 2004, cleared check transaction in the amount of $55.52 involving retailer "Martins Wakefield."

On November 3, 2005, Plaintiff sent TeleCheck all of the information requested in the company's letter. Again, she requested a copy of "all information in my file." (Doc. 51, Morris Dep. at Ex. 3.) In response, TeleCheck sent a letter dated November 9, 2005, which stated:

> Based on the information that you provided, we find no indications that TeleCheck would decline your check transactions. Your file reflects a favorable status and contains no derogatory information.
>
> If we can be of any further assistance, please feel free to contact Checkwriter Services at 1-800-366-2425.

(Doc. 51, Morris Dep. at Ex. 13.)

Plaintiff then commenced this action.

In her complaint, Plaintiff asserts that Telecheck's failure to disclose the Martins Wakfield check, as well as any additional positive data, violates the FCRA which requires that consumer reporting agencies disclose "all information" in a consumer's "file" upon request. *See* 15 U.S.C. § 1681g (a).

While TeleCheck retains records of positive transactions dating back seven years, the company takes the position that positive data more than twelve months old need not be reported.[4] Thus, in TeleCheck's view, it did not violate the FCRA when it failed to disclose the Martins Wakefield check to Morris.

## II. The Controlling Law

### *A. Disclosure Requirements*

Pursuant to Section 1681g of the FCRA, consumer reporting agencies are required to give consumers one free copy per year of all information found in the "consumer file":

> Every consumer reporting agency shall, upon request, . . . clearly and accurately disclose to the consumer:
>
> (1) All information in the consumer's file at the time of the request, except that - . . . .

[4] The company maintains thirteen months of positive data in its electronic database. At the end of any thirteen month period, positive data is still available, but is stored on a back-up tape for up to seven years.

> nothing in this paragraph shall be construed to require a consumer reporting agency to disclose to a consumer any information concerning credit scores or any other risk scores or predictors relating to the consumer.

15 U.S.C. §§ 1681g (1)(A); 1681g (1)(B).

With respect to the requirement that consumer reporting agencies disclose "all information in a consumer's file,"

> [t]he term "file", [sic] when used in connection with information on any consumer, means all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored.

15 U.S.C. § 1681a (g) (emphasis added).

In contrast to the consumer "file" definition, the statute defines a "consumer report" as a "written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's creditworthiness . . . ." 15 U.S.C. § 1681a(d) (emphasis added).

***B. Penalties***

A consumer reporting agency that violates the FCRA may be liable for damages. Where a negligent violation occurs, the consumer reporting agency is liable for actual damages, attorney's fees and costs. 15 U.S.C. § 1681o.

For willful violations, a consumer reporting agency is liable for attorney's fees and costs, along with:

(1) actual damages; or [5]

(2) statutory damages of not less than $100 and not more than $1,000.

15 U.S.C. § 1681n; *see Levine v. World Fin. Network Nat. Bank*, 437 F.3d 1118, 1123 (11th Cir. 2006). Additionally, a Court may impose punitive damages for willful violations. 15 U.S.C. § 1681n.

### *C. The Wilfulness Analysis*[6]

TeleCheck argues that it did not violate the FCRA and, even if it did, Plaintiff cannot establish that TeleCheck's conduct was willful.

The FCRA does not define the term "willfulness" and the legislative history does not explain what willfulness means with respect to FCRA violations.

However, last year the United States Supreme Court interpreted the FCRA "willfulness" requirement in *Safeco Insurance Company of America v. Burr*, 127 S. Ct. 2201 (2007). The plaintiffs in *Safeco* challenged the insurance company's failure to issue an adverse action notice, as required under the FCRA when a company takes adverse action against a consumer based upon information found in the

---

[5] Other jurisdictions have "recognized the possibility that a claim for actual damages under the FCRA may include compensation for emotional distress in the absence of physical injury or out-of-pocket expenses." *Levine v. World Fin. Network Nat. Bank*, 437 F.3d 1118, 1124 - 25 (11th Cir. 2006). However, the Eleventh Circuit has not yet decided this issue. *Id*.

[6] Abandoning her claim for actual damages, Plaintiff has elected to proceed exclusively on her claim of a wilful violation.

consumer's credit report. *Id*. at 2201, 2208-10. The plaintiffs, who were first time customers of Safeco, applied for insurance coverage and where charged rates "higher than the best rates possible." *Id*. at 2207. Safeco did not issue adverse action notices, however, because the FCRA only requires such notices when the adverse action constitutes "an increase in any charge" for insurance. Inasmuch as Plaintiffs were first time customers, Safeco took the position that the plaintiffs' initial insurance premium could not have been an "increase." *Id*. at 2210. Even if the initial rates constituted an increase and the company had violated the statute, Safeco contended that its conduct was not willful.

Because the record was unclear with respect to what insurance premium rate plaintiffs would have obtained if their credit reports had not been considered, the *Safeco* Court declined to decide whether the company had violated the FCRA.

Whether or not Safeco violated the statute, the Supreme Court held that Safeco's conduct was not willful. *Safeco*, 127 S. Ct. at 2215-16. In reaching this holding, the Court established a two part test for determining whether a violation is willful. First, based upon a "reasonable reading of the statute," did the company violate the FCRA. ? *Id*., at 2215. If so, did the company interpret the statute in such a way as to "run a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id*.

Applying this test, the Court held that Safeco's interpretation of the statute, "albeit erroneous, was not objectively unreasonable" given the circumstances. *Id*. Not only was the FCRA "silent on the point from which to measure 'increase,'" but the Federal Trade Commission had not provided any guidance on how the term should be interpreted and no Federal Court of Appeal had spoken on the issue. *Id*. at 2215 - 16.

> Given this dearth of guidance and the less-than-pellucid statutory text, Safeco's reading was not objectively unreasonable, and so f[ell] well short of raising the "unjustifiably high risk," of violating the statute necessary for reckless liability. . . .
>
> Where, as here, the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as knowing or reckless.

*Id*. at 2216 & 2216 n.20.

The instant action is similar to *Safeco* because although erroneously, TeleCheck's interpretation of the statute was not objective unreasonable in light of the agency guidance and relevant legislative history. While no Court of Appeals had spoken on the issue at the time of the incidents which form the basis of Plaintiff's cause of action, a subsequent Seventh Circuit opinion explains:

> [T]he FTC's commentary on § 1681g(a)(1) . . . limits the scope of the term "file" to material included in a consumer report: "The term 'file' denotes all information on the consumer that is recorded and retained by a consumer reporting agency <u>that might be furnished, or has been</u>

> furnished, in a consumer report on that consumer." 16 C.F.R. pt. 600, app. § 603. This agency interpretation, while not binding, supports [Defendant's] argument.
>
> . . . .
>
> [Additionally, l]anguage in the Senate Committee Report discussing the 1996 amendments to the FCRA also favors [Defendant]. Before 1996, § 1681g(a)(1) required [consumer reporting agencies] to provide consumers, upon request, with the "nature and substance" of the information in their files. Congress amended the "nature and substance" language of § 1681g(a)(1) to make [consumer reporting agencies] disclose "all of the information" in a consumer's file.
>
> However, the Committee Report indicates that the amendment aimed to give consumers better access to complete copies of their consumer reports: "Section 408 explicitly requires consumer reporting agencies to provide, upon request, all information in the consumer's file. The Committee intends this language to ensure that a consumer will receive a copy of that consumer's report, rather than a summary of the information contained therein." S.Rep. No. 104-185, at 41 (1995). While this legislative history is not dispositive, it suggests Congress wanted consumers to receive exactly what [Plaintiffs] got from [Defendants]-complete copies of their consumer reports, not their entire files in whatever form maintained by the [consumer reporting agencies].

*Gillespie v. Trans Union Corporation.*, 482 F.3d 907, 908-9 (7th Cir. 2007).

The Seventh Circuit also noted the following with respect to the "file" disclosure provision:

> Section 1681g(a)'s paragraph 1, . . . requires [credit reporting agencies] to disclose all information in the consumer's "file" at the time of the request. Subsequent paragraphs, however, list other types of information that must be revealed as well, including: the name of each person that received a consumer report; the date, original payees, and amounts of any checks that form the basis of an adverse credit entry; and a record

> of all credit inquiries during the one-year period before the consumer's request. If, as [Plaintiffs'] argue, the word "file" in paragraph 1 means "all information on the consumer recorded and retained" by a [credit reporting agency], then these additional paragraphs are unnecessary. On the other hand, if the word "file" in paragraph 1 has a narrower meaning, as urged by [Defendant], then these other subsections retain some semblance of relevancy. Because we try to avoid interpretations of statutes that render words, or other sections, superfluous, the plain language of § 1681g(a)(1) favors [the Defendant].

*Id*. at 909. Consistent with this analysis, the Seventh Circuit held that the consumer "file" disclosure requirement does not actually require disclosure of "all" information, but instead requires disclosure of the information contained in a consumer "report." *Id*. at 910.

In contrast, the Eleventh Circuit Court of Appeals recently reached a different conclusion. In *Nunnally v. Equifax Information Services., LLC*, 451 F.3d 768, 772-73 (11th Cir. 2006), the Eleventh Circuit held that a "consumer file" differs from a "consumer report" because, *inter alia*, a consumer file contains "all information in the consumer's file," while a consumer report is merely "<u>any</u> written, oral, or other communication of any information . . . bearing on a consumer's credit worthiness . . . ." *Id*. at 773-74, 776 (emphasis added).

This Court, of course, is bound by the Eleventh Circuit, and it agrees with the circuit's holding. But on a wilfulness analysis, the Court must consider whether any opposing views of a different circuit are "objectively unreasonable.

While these Court of Appeals cases had not been decided at the time Morris requested her complete "file" from TeleCheck, these conflicting cases, along with the FTC guidance and legislative history, provide a backdrop from which to reach more than one reasonable interpretation of the FCRA "file" disclosure provision.

Because TeleCheck adopted the less reasonable of these two reasonable interpretations, indeed the same one ultimately adopted by the Seventh Circuit, under the the *Safeco* analysis, Plaintiff simply cannot make the requisite showing of wilfulness even though the Court is convinced that for summary judgment purposes Telecheck did in fact violate the FCRA.

It follows that the named class lacks standing to represent a class on the wilfulness claim, for it is axiomatic that one must be a member of the class she purports to represent.

**Conclusion**

For the reasons set forth above, by separate order, Plaintiff's motion for class certification will be denied; the Court will vacate its earlier order denying summary judgment to Telecheck ; on *sua sponte* reconsideration, summary judgment will be granted; and the action dismissed in its entirety.

________________________________
U.W. Clemon
United States District Judge